IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 06-457 |
| v. | : | |
| | : | |
| LEWIS EISENBERG | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                          JULY 25, 2007

On April 26, 2007, Defendant Lewis Eisenberg pled guilty to charges stemming from his illegal purchase of imported Sperm whale teeth. In the plea agreement between him and the Government, Eisenberg agreed to pay a fine of $150,000. At the hearing, the Court expressed concern regarding the amount of the fine, because the maximum fines specified in each of the three statutes of which he was convicted total only $90,000. The Government contends that the alternate fine statute, 18 U.S.C. § 3571, controls this case, and that Eisenberg is actually subject to a total maximum fine of $450,000.[1]

In the same way that a court cannot sentence a defendant to 10 years in prison when the statutory maximum is 5 years, even if the defendant agrees to the longer term, a court cannot sentence

---

[1] The Court raised the issue of the maximum allowable fine sua sponte and invited the parties to brief the issue. The Government filed a timely and helpful brief (doc. no. 14). Defendant filed nothing.

a defendant to a fine larger than the maximum allowed under the statute, even if the defendant agrees to the fine.

Eisenberg pled guilty to an information charging him with three counts. Count I is a violation of the Lacey Act, 16 U.S.C. § 3372(a)(1), for purchasing wildlife in violation of a United States treaty, specifically the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES). Count II is a violation of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(E), for receiving and transporting a threatened species of wildlife. Count III is a violation of the Marine Mammal Protection Act, 16 U.S.C. § 1372(a)(4)(B), for purchasing a marine mammal product for purposes other than public display, scientific research, or enhancing the survival of a species.

The maximum fine for a violation of the Lacey Act is $20,000, 16 U.S.C. § 3373(d)(1)(B), for the Endangered Species Act, $50,000, 16 U.S.C. § 1540(b)(1), and for the Marine Mammal Protection Act, $20,000, 16 U.S.C. § 1375(b). Thus, the total maximum fine is seemingly $90,000.

However, the Government contends that fines specified in the alternate fine statute, 18 U.S.C. § 3571,[2] trump those provided for in the statutes of conviction. The alternate fine statute

---

[2] 18 U.S.C. § 3571, while providing for alternate fines, is more commonly used as the default or catch-all fine statute. When provisions of the U.S. Code provide that a fine may be imposed but do not themselves provide the maximum amount of the fine, § 3571 supplies the amount.

provides that "[e]xcept as provided in subsection (e) of this section, an individual who has been found guilty of an offense may be fined not more than the greatest of (1) the amount specified in the law setting forth the offense," or (2)-(7), which each specify certain amounts depending on the grade of the violation (felonies, misdemeanors, and infractions). 18 U.S.C. § 3571(b). Subsection (e), titled "Special rule for lower fine specified in substantive provision," provides:

> If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense.

18 U.S.C. § 3571(e).

According to the pure terms of § 3571(b), Eisenberg is subject to a maximum fine of §450,000.[3]

---

[3] The alternate fine statute provides that a maximum fine for a felony is $250,000 and for a Class A misdemeanor that does not result in death is $100,000. 18 U.S.C. § 3571(b)(3), (5).

A violation of the Lacey Act is a felony, because the maximum term of imprisonment is five years. 16 U.S.C. § 3373(d)(1)(B); see 18 U.S.C. § 3559(a)(4) (defining a felony). Violations of the Endangered Species Act and Marine Mammal Protection Act, because they each carry maximum terms of imprisonment of one year, are class A misdemeanors. 16 U.S.C. § 1540(b)(1); 16 U.S.C. § 1375(b); see 18 U.S.C. § 3559(a)(6) (defining a class A misdemeanor).

Therefore, under § 3571(b), the maximum fine for violating the Lacey Act is $250,000 and for violating the Endangered Species Act and Marine Mammal Protection Act is $100,000 each. The total maximum fine would thus be $450,000 under § 3571.

None of the statutes under which Eisenberg was convicted invoked § 3571(e)'s "special rule," specifically exempting itself from the higher maximum fines provided for in the alternate fine statute.

Normally, when a statute is clear on its face (as § 3571 is), a court must take the statute at face value and is precluded from delving into legislative history to divine Congress's intent.  2A Sutherland Statutory Construction § 45:2 (6th ed.).  However, when one statute implicitly repeals another (as is the case with § 3571 implicitly repealing the fines provided for in the Lacey Act, Endangered Species Act, and Marine Mammal Protection Act), a court should examine legislative history to find whether repeal was indeed intended.  1A Sutherland Statutory Construction § 23:10.  Therefore, the Court will look to the history of the enactments of the various provisions at issue here.

Section 3571 was originally enacted on October 30, 1984, as the Criminal Fine Enforcement Act of 1984, Pub. L. No. 98-596, 98 Stat. 3134, 3137.  However, three weeks earlier, on October 12, 1984, Congress had enacted the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, 1995, which also contained a maximum fine provision that was designated as 18 U.S.C. § 3571.  In 1987, Representative Conyers explained the conflict (and Congress's solution):

> The criminal fine provisions currently in effect [in October 1987] were enacted by the Criminal Fine Enforcement Act of 1984. That bill was the product of work by the House and Senate Judiciary Committees, the Department of Justice, the Administrative Office of the U.S. Courts and the U.S. Parole Commission. The Criminal Fine Enforcement Act was developed independently and was enacted after the Sentencing Reform Act of 1984, which also contained criminal fine provisions.
>
> At the time of the enactment, the interested parties agreed that the Criminal Fine Enforcement Act's fine provisions were superior to those of the Sentencing Reform Act. However, because it was so close to the end of the 98th Congress, there was not enough time to merge the two bills. Both bills were therefore enacted. The Criminal Fine Enforcement Act's provisions have been in effect since then, but are scheduled to be repealed on November 1 [, 1987] when the Sentencing Reform Act takes effect.
>
> At the time the bills were enacted, the interested parties agreed that before the Sentencing Reform Act took effect, its fine provisions would be replaced by the Criminal Fine Enforcement Act's. This legislation [the Criminal Fine Improvements Act of 1987] carries out this understanding.

133 Cong. Rec. 29249, 29252 (1987) (statement of Rep. Conyers).

Congress's solution was the passage of the Criminal Fine Improvements Act of 1987, Pub. L. No. 100-185, 101 Stat. 1279, 1280. The language of § 3571(b), which provides that the maximum fine is the greater of the fine in the statute of conviction or some specified amount, remained unchanged.

Congress's intent in passing the Criminal Fine Enforcement Act of 1984 (and thus § 3571(b)) is clear: it thought that some fines in the U.S. Code were too low, and it intended § 3571(b) to substantially increase all fines. According to the House Report

(there was no Senate Report), one purpose of the legislation was "to make criminal fines more severe."  H.R. Rep. No. 98-906, at 1 (1984), reprinted in 1984 U.S.C.C.A.N. 5333, 5433.  "The maximum fines of present law--except for some of the recently enacted ones and some of the regulatory offenses--are too low to constitute a significant punishments [sic] for the offense involved."  Id. at 16, 1984 U.S.C.C.A.N. at 5448-49.  The Criminal Fine Enforcement Act of 1984 was designed to "increase[] the maximum fine levels for all federal criminal offenses except petty offenses."  Id. at 15, 1984 U.S.C.C.A.N. at 5448; see also 130 Cong. Rec. 31945, 31946 (1984) (statement of Sen. Percy) ("This new law sharply increases the criminal fines which can be assessed for all categories of fines."); 130 Cong. Rec. 21486, 21488 (1984) (statement of Rep. Conyers) ("[The Criminal Fine Enforcement Act of 1984] attempts to make the criminal fine a more effective criminal sanction--and thus a more attractive alternative to imprisonment--by authorizing Federal courts to impose higher fines.); id. at 21489 (statement of Rep. Gekas) ("Among the major provisions of the bill, it increases fine levels for both felonies and misdemeanors to reflect the value of today's dollar."); id. at 21489 (statement of Rep. Boucher) ("[M]aximum fine levels are currently so low that criminals can consider fines a cost of doing business. . . . [The bill] generally raises the level of all criminal fines."); id. at 21490

6

(statement of Rep. Rodino) ("[The bill] brings Federal criminal fines into the 1980's.  It authorizes substantially increased fines for all Federal offenses.  This is particularly important in the areas of drug offenses and corporate and white collar crime, where the criminal often views a fine as a cost of doing business.").

Congress's intent in 1987 in adding subsection (e), the "special rule" for a lower fine in the statute of conviction, is less clear.  Subsection (e) was not mentioned in the floor debate.  The one paragraph in the House Report (there was no Senate Report) addressing subsection (e) provides:

> New section 3571(e) establishes that the fine limits set by new section 3571 do not apply if a lesser fine is specified in the section setting forth an offense, provided that such section specifically exempts the offense from the fine otherwise applicable under new section 3571.  This provision will assure that future enactments can establish a lower fine level only by express language.  A statute that intends to establish a lower fine for an offense must on its face negate the effect of new section 3571.

H.R. Rep. No. 100-390, at 6 (1987), reprinted in 1987 U.S.C.C.A.N. 2137, 2142.

Contrary to the purpose of the Criminal Fine Enforcement Act of 1984, which was to increase all fines, the Criminal Fine Improvements Act of 1987, according to the House Report, was designed to hamstring all future Congresses by providing that they could establish a lower fine only by express language.  In other words, the Criminal Fine Improvements Act of 1987 did not

7

look back, but rather looked forward.  The 100th Congress's ability to restrict the power of future Congresses (by requiring them, if they desire to set a lower fine level, to, in addition to setting the lower fine level, specifically exempt the statute from § 3571) is suspect.  See Cooper v. Gen. Dynamics, 533 F.2d 163, 169 (5th Cir. 1976) (holding that one Congress cannot insulate a statute from amendments by future Congresses); cf. Williams v. United States, 240 F.3d 1019, 1027-30 (Fed. Cir. 2001) (implying that, under the Constitution's Compensation Clause, Congress's setting of judges' pay is an exception to the general rule that one Congress cannot bind a future Congress).

Nevertheless, the plain language of § 3571(e) means that the maximum fine for all previously enacted provisions of the U.S. Code is increased, unless Congress takes affirmative action to amend a provision to exempt it from § 3571.  Congress has taken such action three times.  First, in 1988, Congress amended 42 U.S.C. § 2273, which provides for a lower fine for violating an atomic energy regulation than is provided in 18 U.S.C. § 3571, to specifically exempts § 2273 from § 3571.  See Pub. L. No. 100-408, 102 Stat. 1066.  Second, in 1994, in the Violent Crime Control and Law Enforcement Act, Congress amended 18 U.S.C. §§ 3 and 373 to provide that the maximum fine for an individual convicted of being an accessory after the fact or of solicitation of a crime of violence is one-half of the "maximum fine

prescribed for the punishment of the principal," notwithstanding § 3571.[4]  See Pub. L. No. 103-22, 108 Stat. 1796, 2148.  Third, in 1995, as part of the ICC Termination Act, Congress added a new 49 U.S.C. § 11908, which provides that the criminal fines for violations of 49 U.S.C. § 11901 et seq. (statutes regulating rails in interstate transportation) are exempted from § 3571.  See Pub. L. No. 104-88, 109 Stat. 803, 852.[5]

   Therefore, when Congress enacted § 3571 in 1984 (and added subsection (e) in 1987), it repealed the lower fines contained in the Lacey Act (the $20,000 fine was enacted as part of the Lacey Act Amendments of 1981, see Pub. L. No. 97-79, 95 Stat. 1073,

---

[4] It is unclear if the "maximum fine prescribed for the punishment of the principal" is that which is provided for in the statute of conviction (the logical conclusion), or perhaps that provided for in the alternate fine statute (the conclusion suggested by the plain language of § 3571).

For example, if an individual was convicted of being an accessory after the fact to a violation of the Lacey Act, would he be subject to a maximum fine of $10,000 (one-half of the $20,000 fine provided for in the Lacey Act itself) or $125,000 (one-half of the $250,000 fine for a felony provided for in the alternate fine statute)?

[5] In addition to these three instances, on one occasion Congress exempted a post-1987 statute from § 3571.  In May 1994, Congress passed the Freedom of Access to Clinic Entrances Act, Pub. L. No. 103-259, 108 Stat. 694 (codified at 18 U.S.C. § 248), which provided for a fine for a subsequent offender who uses only nonviolent obstruction that is lower than the fine specified in § 3571; the Act did not specifically exempt § 248 from § 3571.  But then, in September 1994, before the Act had gone into effect, Congress amended § 248 to specifically exempt it from § 3571.  See Pub. L. No. 103-322, 108 Stat. 1796.  The House Conference Report listed this amendment as a "technical correction."  H.R. Conf. Rep. No. 103-711, at 367 (1994).

1076[6]) and the Marine Mammal Protection Act (the $20,000 fine was part of original Marine Mammal Protection Act enacted in 1972, see Pub. L. No. 92-522, 86 Stat. 1027, 1036).  It is settled, then, that the maximum fine for violating the Lacey Act is $250,000 and the Marine Mammal Protection Act is $100,000.

The wrinkle arises with respect to the Endangered Species Act.  The Endangered Species Act was originally enacted in 1973.  See Pub. L. No. 93-205, 87 Stat. 884.  The fine, as part of that Act, was $20,000.  See 87 Stat. at 898.  However, on October 7, 1988 (after § 3571 had been enacted), Congress passed the Endangered Species Act Amendments of 1988, increasing the maximum fine from $20,000 to $50,000.  See Pub. L. No. 100-478, § 1007(b), 102 Stat. 2306, 2309.  Neither at that time nor at any future time did Congress specifically exempt the Endangered Species Act from § 3571.  Interestingly, the same Congress (the 100th) enacted both the Criminal Fine Improvements Act of 1987 and the Endangered Species Act Amendments of 1988.

In this circumstance, the Court will follow Congress's pronouncement in the Endangered Species Act Amendments and ignore

---

[6] The The Lacey Act itself was originally enacted in 1900, ch. 553, 31 Stat. 187, although the provision of the Lacey Act that Eisenberg pled guilty to violating, 16 U.S.C. § 3372(a)(1), was enacted as part of the Lacey Act Amendments of 1981.  See Pub. L. No. 97-79, 95 Stat. 1073.

its statement in the Criminal Fine Improvements Act.[7]  After all, why would Congress go through the trouble of raising the maximum fine to an amount lower than the fine specified in the alternate fine statute without specifically exempting the Endangered Species Act from § 3571?[8]  By the terms of § 3571, Congress's 1988 amendment to the Endangered Species Act would be a nullity.  And it is a "settled rule that a statute must, if possible, be

---

[7] The Court is aware that other courts have summarily stated that § 3571 controls over other statutes that do not specifically exempt themselves.  See, e.g., United States v. Ming Hong, 242 F.3d 528, 534 (4th Cir. 2001) (Clean Water Act); United States v. Luppi, 1999 WL 535295, at *2 n.2 (10th Cir. July 26, 1999) (unpublished) (Forest Service regulations); United States v. Countryman, 1996 WL 166992, at *1 (5th Cir. Mar. 7, 1996) (unpublished) (Travel Act); United States v. Hobbs, 1993 WL 7924, at *2 n.1 (4th Cir. Jan. 15, 1993) (per curiam) (unpublished) (General Services Administration regulation); United States v. Pyatt, 725 F. Supp. 885, 888 (E.D. Va. 1989) (Federal property management regulation); United States v. Bronx Reptiles, Inc., 949 F. Supp. 1004, 1008 n.8 (E.D.N.Y. 1996) (Lacey Act), rev'd on other grounds, 217 F.3d 82 (2d Cir. 2000). However, none of these cases involves the Endangered Species Act or a detailed analysis of Congress's actions.

[8] Of course, the Endangered Species Act Amendments came out of the House Merchant Marine and Fisheries Committee and the Senate Environment and Public Works Committee, while the Criminal Fine Improvements Act came out of the House and Senate judiciary committees.  It is entirely possible that the environmental committees were not aware of the Criminal Fine Improvements Act (which, after all, because it was so recently enacted, might not have been in the statute books) when they composed the Endangered Species Act Amendments.

However, this Court will not delve so deeply into the workings of Congress or ascribe a particular reason for its action here.  If Congress desires the maximum fine for a violation of the Endangered Species Act to be $100,000, as § 3571 implies, then Congress can take such action to make it so.

construed in such fashion that every word has some operative effect." United States v. Nordic Village Inc., 503 U.S. 30, 36 (1992). It is a fundamental rule of statutory construction that each word in each act of Congress should be given effect. See 2A Sutherland Statutory Construction § 46:6. To hold that the Criminal Fine Improvements Act, enacted in 1987, makes section 1007(b) of the Lacey Act Amendments, enacted in 1988, a nullity, would be to contravene this fundamental rule of statutory construction.

Other principles of statutory construction also weigh in favor of holding that the alternate fine statute does not trump the fine in the Endangered Species Act. The "rule of lenity" mandates that when there are two possible punishments prescribed by Congress for the violation of a certain statutory provision, the Court is to apply the less harsh punishment to the defendant. Bifulco v. United States, 447 U.S. 381, 387 (1980). "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." Ladner v. United States, 358 U.S. 169, 178 (1958). Of course, however, for the rule of lenity to come into play, there must be ambiguity as to Congress's intent. See Bifulco, 447 U.S. at 387 ("Where Congress has manifested its intention, [the Court] may not manufacture

ambiguity in order to defeat that intent."). For example, when Eisenberg purchased the Sperm whale teeth, he is presumed to have known that he was violating the Endangered Species Act. In theory, if he so desired, he could have looked up the penalties for violating the Act and made an informed decision that purchasing the whale teeth was worth the risk of a $50,000 fine. If he is now subject to a $100,000 fine for violating the Act, he has been deprived of that choice. It is this situation which the rule of lenity seeks to prevent.

In addition, another principle of statutory construction is that a more specific statute usually controls over a more general one, and that a newer statute usually controls over an older one. 1A <u>Sutherland Statutory Construction</u> § 23:9. The Third Circuit has stated:

> General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

<u>In re Guardianship of Penn</u>, 15 F.3d 292, 294 (3d Cir. 1994) (quoting <u>Creque v. Luis</u>, 803 F.2d 92, 94 (3d Cir. 1986)). The Endangered Species Act Amendment of 1988 is both newer and more specific than the Criminal Fine Improvements Act of 1987. Therefore, the Court concludes that the maximum fine to which

Eisenberg is subject for violating the Endangered Species Act is $100,000.

Accordingly, Eisenberg is subject to a maximum fine of $250,000 for violating the Lacey Act, see 18 U.S.C. § 3571(b)(3), $100,000 for violating the Marine Mammal Protection Act, see 18 U.S.C. § 3571(b)(5), and $50,000 for violating the Endangered Species Act, see 16 U.S.C. § 1540(b)(1).  His total possible maximum fine is thus $400,000.  It is therefore within the Court's power to sentence Eisenberg to a fine of $150,000, as contemplated in his plea agreement.